# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LEGION PARTNERS ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company, )
)
) C.A. No. N19C-08-305 AML CCLD
)

Plaintiff, )

v. )

UNDERWRITERS AT LLOYDS LONDON, )
)

Defendant. )

Submitted: November 16, 2020
Decided: November 23, 2020

## ORDER DENYING DEFENDANT'S APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Defendant asks this Court to certify for interlocutory appeal an opinion granting partial summary judgment in Plaintiff's favor on an insurance coverage question. The issues the Court resolved were based on settled principles of Delaware law, and—despite Defendant's disagreement with the Court's ruling and mischaracterization of the Court's reasoning—the opinion simply does not warrant the exceptional step of interlocutory review. To the contrary, very little remains to be resolved in this case, and once the parties complete the contractually defined allocation process, the entire case will be ripe for a direct appeal from a final judgment. Accordingly, Defendant's application is denied.

1

## FACTUAL BACKGROUND

1. On May 14, 2018, Justin Albert ("Albert") initiated an action in the Los Angeles Superior Court (the "LASC Action") against Legion Partners Asset Management ("Legion") and two of its principal directors, managers, and officers, Raymond T. White and Christopher S. Kiper. Albert alleged White and Kiper breached their fiduciary duties and violated federal laws and regulations by leaking confidential information to a reporter. Albert also asserted a claim against Legion for retaliation and wrongful termination. On July 27, 2018, the LASC Action was stayed, and the parties entered binding arbitration to resolve the employment claims.

2. On August 22, 2018, Albert filed an Arbitration counterclaim (the "Counterclaim") against Legion for wrongful termination and violation of California's whistleblower statute. White and Kiper were not named as defendants in that Counterclaim, but the Counterclaim relied on the same alleged wrongful acts that formed the basis for the LASC Action. The Arbitration ultimately ended with an award in Legion's favor with respect to Albert's Counterclaim. The parties then stipulated to the LASC Action's dismissal.

3. Underwriters declined coverage for the Counterclaim under Legion's D&O liability insurance policy ("the Policy") because White and Kiper were not parties to that claim. Legion filed this coverage action seeking an order declaring Underwriters had a duty to pay the defense costs Legion incurred in the LASC

Action and the Arbitration. On November 12, 2019, Legion filed a Motion for Partial Summary Judgment, and on September 25, 2020, the Court issued the Opinion holding the allegations in the Counterclaim triggered Underwriters' duty to advance under Sections I.A.2 and I.A.3 of the Policy. The Court further held that the Policy required the parties to allocate defense costs between covered and uncovered claims and directed the parties to use their reasonable best efforts to agree upon allocation as required by the Policy's express terms. Underwriters moved to reargue the summary judgment motion, which the Court denied on October 29, 2020 (the "Order"). On November 9, 2020, Underwriters filed this Application for Certification of Interlocutory Appeal to the Delaware Supreme Court as to both the Opinion and the Order. Legion filed its opposition to the Application on November 16, 2020, arguing Underwriters failed to establish any exceptional circumstances warranting interlocutory review.

## APPLICABLE STANDARD

4. Delaware Supreme Court Rule 42(b) establishes the standard for certifying an interlocutory appeal. "No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[1] A "substantial issue of material importance" is one that goes to the

---

[1] Del. Supr. Ct. R. 42(b)(i).

merits of the case.[2]  In deciding whether to certify an interlocutory appeal, the trial court must consider: (1) the eight factors listed in Rule 42(b)(iii);[3] (2) the most efficient and just schedule to resolve the case; and (3) whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.[4]  "If the balance [of these considerations] is uncertain, the trial court should refuse to certify the interlocutory appeal."[5]

## DISCUSSION

5.    In order to determine whether the Opinion and Order decide one or more issues of material importance that warrant appellate review before final judgment, this Court must consider the eight factors listed in Rule 42(b)(iii).

---

[2] *Id.*

[3] Del. Supr. Ct. R. 42(b)(iii) provides that the trial court should consider whether;

(A) The interlocutory order involves a question of law resolved for the first time in this State;

(B) The decisions of the trial courts are conflicting upon the question of law;

(C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;

(D) The interlocutory order has sustained the controverted jurisdiction of the trial court;

(E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;

(F) The interlocutory order has vacated or opened a judgment of the trial court;

(G) Review of the interlocutory order may terminate the litigation; or

(H) Review of the interlocutory order may serve considerations of justice.  See Del. Supr. Ct. R. 42(b)(iii).

[4] *Id.*

[5] *Id.*

Underwriters argues the Opinion and Order decided a substantial issue of material importance because they address the scope of insurance coverage, and this Court previously found the interpretation of D&O liability insurance coverage warranted certification to the Delaware Supreme Court.[6] Underwriters contends that this case meets three of the factors under Rule 42(b)(iii): the Opinion involves questions of law addressed for the first time in this State, review of the Opinion serves considerations of justice, and review may terminate the litigation.

6.      Underwriters' contention that the Opinion involved issues of first impression is incorrect. According to Underwriters, the Opinion presents two issues that never have been addressed directly in Delaware. In Underwriters' view, those issues are:

(1) Whether Side B [Section I.A.2] corporate reimbursement coverage . . . providing coverage for 'Loss which the Insured Organization pays as indemnification to any Insured Person arising from a Claim for a Wrongful Act' requires Underwriters to indemnify Legion's defense costs merely because it is alleged to have acted through the conduct of its D&Os; and

(2) Whether Side C [Section I.A.3] entity coverage . . . which plainly and unambiguously provides coverage for 'Loss arising from Claims against any insured organization for a Wrongful Act' is triggered by an allegation of a purported Wrongful Act, when the employment related Claim against that entity is plainly not for a Wrongful Act.[7]

---

[6] Def.'s Appl. at 8-9; *Solera Holdings, Inc. v. XL Specialty Insurance Company*, 2019 WL 4733431, at *3 (Del. Super. Sept. 26, 2019).

[7] Def.'s Appl. at 9-10.

7.     This newly-minted argument is not supported by the record or the Court's opinion. None of the parties argued in their summary judgment briefing that the case involved issues of first impression, and this Court did not so find. Rather, the coverage question involved application of unambiguous policy language to the pleadings in the underlying litigation. That Underwriters disagrees with the Court's interpretation or believes it contradicts Delaware law is not enough to bring this case within Rule 42(b)(iii)(A). The "issues of first impression" that Underwriters describes in its Application are only Underwriters' mischaracterization of the Court's holdings.

8.     Second, Underwriters asserts interlocutory review would serve considerations of justice.[8] Underwriters maintains the Court's Opinion improperly disregarded the corporate form by finding the Side B coverage was triggered even though the Counterclaim was not asserted against White and Kiper directly. Underwriters further contends the Court's application of the "potential for coverage" standard was wrong and interlocutory review is necessary to correct this misstatement of law. Underwriters also argues the Court's interpretation of *Ferrellgas Partners L.P. v. Zurich American Ins. Co.* ignores and conflicts with that

___

[8] Del. Supr. Ct. R. 42(b)(iii)(H)

case's limitation that "Wrongful Acts, absent a Claim causing Loss to the Insureds, do not trigger [insurers'] duty to advance defense costs."[9]

9.     The Court does not agree that interlocutory review would serve considerations of justice.  Underwriters first argues this Court disregarded the corporate form and adopted a "novel theory that finds no support in Delaware corporate law."[10]  As the Court explained in the Order, this argument lacks merit.[11] Legion incurred the Loss by defending the Counterclaim's factual allegations against White and Kiper.  In light of the pending LASC Action, Legion had no choice but to defend its officers' conduct. As stated in the Opinion, Delaware law recognizes that both the duty to defend and the duty to advance arise "whenever the underlying complaint alleges facts that fall within the scope of coverage," and Delaware courts construe both duties "broadly in favor of the policyholder."[12]  The Counterclaim's allegations are substantively the same as the allegations in the LASC Action, where White and Kiper were parties to the claims.  Similarly, Legion's argument that the Court applied the wrong standard to a duty to advance policy is both wrong and, in any event, does not meet the standard for interlocutory review.  Otherwise,

---

[9] *Ferrellgas Partners L.P. v. Zurich American Ins. Co.*, 2020 WL 363677, at *9 (Del. Super. Jan. 21, 2020).

[10] Def.'s Appl. at 13.

[11] 2020 WL 6338359, at *2 (Oct. 29, 2020).

[12] *Legion*, 2020 WL 5757341, at *6 (quoting *Verizon Commc'ns Inc. v. Illinois Nat'l Ins. Co.,* 2017 WL 1149118 at *6 (Del. Super. March 2, 2017)).

interlocutory review would be appropriate in every case in which a losing party contends the Court committed legal error.[13]

10. The Court also does not agree that the Opinion conflicts with similar Delaware decisions. Defendant argues the Court's broad definition of "Wrongful Acts" conflicts with the language in *Ferrellgas* that "Wrongful Acts, absent a Claim causing Loss to the Insureds, do not trigger [insurers'] duty to advance defense costs."[14] As the Opinion explains, this Court's reasoning is consistent with *Ferrellgas* court's broad interpretation of "Wrongful Act." The *Ferrellgas* court's conclusion that no coverage was triggered in that case was based on policy language not present in this case.[15]

11. Finally, Underwriters argues interlocutory review is the most efficient way to resolve the case because, if the Delaware Supreme Court finds the claims are not covered by the Policy, all other issues will be moot and the litigation will end. Although this theoretically is true, it does not make interlocutory review appropriate because any incremental benefit afforded by immediate review would not outweigh the imposition on the parties and the judicial system. This case is nearly at its conclusion; the only unresolved issue is the parties' allocation of defense costs

---

[13] Defendant also contends the Court's decision has broad implications for the insurance industry, but relies on nothing more than the above-mentioned mischaracterizations of the Court's ruling. Again, the Court's decision was based on settled principles of law and did not resolve any novel issues.

[14] *Ferrellgas*, 2020 WL 363677, at *9.

[15] *Legion*, 2020 WL 5757341, at *9, n.79.

between covered and uncovered claims.[16]  Once the parties resolve the allocation issue, the entire case will be ripe for direct appeal to the Delaware Supreme Court.

## CONCLUSION

**IT IS HEREBY ORDERED** that the application for certification to the Supreme Court of the State of Delaware for disposition in accordance with Supreme Court Rule 42 is **DENIED.**

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge

Original to Prothonotary
cc: All Counsel of Record

---

[16] *Id.* at *10.  The Court ordered the parties to attempt to privately allocate the claims because the Policy requires each side to use their reasonable best efforts to do so.  The Court will determine the allocation should the parties' efforts fail.

9